Grafton,
Nov. 8, 1916.

### VILLAGE PRECINCT OF HANOVER *v.* JOEL C. ATKINS.

A by-law of a village precinct which in general terms declares that no person shall set up any "business which shall more immediately expose the precinct to destruction by fire," but lays down no specific rules or regulations, is an invalid attempt to exercise an authority "to regulate," and is void because the by-law reserves to the commissioners the power to decide the question of the fire-risk in each individual case, guided by no general rule or regulation.

PETITION, for an injunction to restrain the defendant from using a building within the limits of the fire district in the plaintiff precinct for a blacksmith shop. A demurrer to the bill was overruled, subject to exception. The commissioners of the precinct granted the defendant a permit to "build a barn to house one or two horses on his premises. . . . Said building is not to be used for a blacksmith shop nor for any other purpose than stated above." The court found that a blacksmith shop on the defendant's premises, which is located some thirty-five feet from other buildings will increase the fire risk in that vicinity, and ordered an injunction to issue as prayed for. The defendant excepted to the order. Other facts appear in the opinion. Transferred from the January term, 1916, of the superior court by *Chamberlin*, J.

*John E. Allen*, by brief and orally, for the plaintiff.

*Scott Sloane*, by brief and orally, for the defendant.

WALKER, J. For the purposes of this decision, it may be assumed that the Village Precinct of Hanover was legally established and organized as a body corporate, that it legally created within the village precinct a fire district which includes the defendant's building

or proposed blacksmith shop, which is located in the most compact part of the precinct, and that the precinct commissioners acted in good faith when they granted to the defendant the qualified permit or license to erect the building.  But the fact clearly appears that they attempted to deprive him of the right or privilege of carrying on the business of blacksmithing in his proposed building.  In the permit, which merely authorizes the erection of "a barn to house one or two horses," it is expressly said that, "said building is not to be used for a blacksmith shop."  For the threatened violation of this restriction by the defendant, the commissioners instituted this proceeding, claiming that a blacksmith shop in that locality and within the limits of the fire district would increase the danger of a conflagration in that vicinity, and would therefore constitute a nuisance, which they were authorized to prohibit.  In other words, their position is, that acting in behalf of the public they had the power to issue that mandate, while it is insisted by the defendant that they exceeded their legal authority in the premises, and that he is not bound to observe the restriction which the commissioners sought to impose upon him.

Is the order, which in effect assumed power to deprive the defendant of the full enjoyment of his property, effective and binding as a matter of law?  In 1901 the legislature empowered the Village Precinct of Hanover to adopt certain statutory provisions increasing the powers of the precinct and conferring upon the commissioners "all the powers  .  .  .  of city councils as prescribed by section 10, sub-section 8, chapter 50 of the Public Statutes."  Laws 1901, c. 225, s. 5.  The provisions of this act were adopted at a regular meeting of the precinct held on March nineteen, 1910, and thereupon became effective.  Subsequently the commissioners in accordance with the enabling act adopted and promulgated certain by-laws, among which is the following:  "No person hereafter shall erect or cause to be erected, move or cause to be moved, enlarge or cause to be enlarged, any wooden building, unless it be for a dwelling house and for no other purpose, or set up or cause to be set up, or use any steam engine, black-smith shop, stable, or other thing or business which shall more immediately expose the Precinct to destruction by fire, in any building within the limits of the Precinct described in the following section, without consent of the Commissioners," &c. The powers of city councils in relation to this subject, which the commissioners were authorized to exercise as above indicated, were conferred by the legislature in the following language:—"to regulate the

erection or use of buildings within the most compact part of the city, for any purpose which in the opinion of the city councils shall more immediately expose said city to.destruction by fire, and to define the limits of such compact part." P. S., *c.* 50, *s.* 10, *sub-section* viii.

But the commissioners made no regulation in regard to the business of blacksmithing in the precinct, applicable to all the inhabitants residing therein. The only semblance of a regulation contained in the by-law is the prohibition of the use of a blacksmith shop, "which shall more immediately expose the precinct to destruction by fire." This language was substantially adopted from the statute above quoted (P. S., *c.* 50, *s.* 10), which defined and limited the power of the commissioners in enacting by-laws to prevent an increase of the fire-risk arising from adjacent buildings. They were authorized to make reasonable rules and regulations to promote this general purpose of the legislature, not merely to adopt the statutory language in the form of a by-law and reserve to themselves in each individual case the power of deciding the question of the fire-risk, guided by no specific.rule or law. It was not the intention of the legislature to vest in them arbitrary power to permit one man to do blacksmithing in the precinct and to deny the right or privilege to another under similar circumstances. But that result would follow in the absence of any rule which they were bound to apply and enforce.

Authority "to regulate" an occupation does not include power to act without regulation or to prohibit or suppress the business. 2 Dill. Mun. Corp. (5th ed.) *s.* 665. Authority to regulate the erection or use of buildings in a thickly settled community, for the purpose of fire protection would not justify a so called rule that no buildings should be erected without the consent of certain officials. Without regard to the constitutional objection to such procedure, it would not conform to the authorization. It would be the exercise of power unrestrained·by rules or regulations in the legislative sense. Unrestrained power evidently was not intended by the legislature. The commissioners were authorized to make regulations to effectuate the purpose of the act, as for instance, to provide the number of feet from other buildings the blacksmith shop should be located, or to prescribe some reasonable method in accordance with which the business could be carried on without materially increasing the danger from fire. In the absence of any reasonable rule on the subject their action was void, because the by-law under which they acted "lays down no *rules* by which its *impartial execution* can be secured

or partiality and oppression prevented." Baltimore v. Radecke, 49 Md. 217, 230. See also Yick Wo v. Hopkins, 118 U. S. 356. It is to be noted that in the case of Concord v. Morgan, 74 N. H. 32, the question of the validity of the ordinance was not involved; the only point decided was that a certain structure or shed was a "building" within the meaning of an ordinance relating to the use of steam engines in "any building."

In view of the foregoing it is unnecessary to consider the question whether a bill in equity for an injunction is the proper remedy to prevent the threatened violation of a municipal ordinance which is penal in character, when such remedy is not given by statute. It is, to say the least, an interesting question, upon which the following authorities have an important bearing: Houlton v. Titcomb, 102 Me. 272; Waupun v. Moore, 34 Wis. 450; Attorney-General v. Brown, 24 N. J. Eq. 89; Worthington v. Waring, 157 Mass. 421; Cope v. Association, 99 Ill. 489; State v. Schweickardt, 109 Mo. 496; Ocean City Association v. Schurch, 57 N. J. Eq. 268; Tiede v. Schneidt, 99 Wis. 201; In re Debs, 158 U. S. 564; Rhodes v. Dunbar, 57 Pa. St. 274; Northern Pacific Railroad v. Whalen, 149 U. S. 157; State v. O'Leary, 155 Ind. 526; Pfingst v. Senn, 94 Ky. 556; 1 High Inj., s. 742; Wood Nuis., ss. 11, 12.

Exception sustained.

All concurred.