Personnel Commission
No. 86-132

## PETITION OF MARY C. DALY
## (New Hampshire Personnel Commission)

December 30, 1986

*New Hampshire Legal Assistance*, of Concord (*John E. Tobin, Jr.*, on the brief and orally), for the petitioner.

*Stephen E. Merrill*, attorney general (*Michael J. Walls*, assistant attorney general, on the brief and orally), for the State.

JOHNSON, J.  The petitioner, a 62-year-old resident of Concord, was employed by the department of public works and highways (DPWH) from September 19, 1983, until her employment was terminated on January 25, 1985. The petitioner was terminated on the basis of a personnel department memorandum, dated January 21, 1985, which announced a new personnel policy under which State employees were to be "considered to have voluntarily resigned" if they were "absent due to illness after exhausting sick leave, but were not authorized leave without pay." The January 21, 1985, memorandum provided further that: "[v]oluntary resignations do not give rise to any appeal rights."

The parties do not dispute that on January 25, 1985, the day of Daly's termination, she was too ill to report to work. They also do not dispute that Daly had illnesses in August and November, 1984, and again in January, 1985. Thus, her "sick leave" was exhausted, but she had approximately four days of accrued annual leave to her credit when she was terminated.

Both Daly's supervisor and counsel for the DPWH agreed Daly never received any written warnings as to the possible consequences of her further absence due to illness. Further, she asserted that she was not made aware of the January 21, 1985, memorandum setting forth the "self-termination" policy. Daly appealed her termination to the personnel commission, now the personnel appeals board, RSA 21-I:45 (Supp. 1986), which refused to hear the appeal. Her subsequent petition for certiorari to this court was accepted. The commission then reversed itself and granted Daly a hearing. The commission upheld Daly's termination, and the present request for certiorari followed.

First, we find that the issuance of the memorandum by the personnel department on January 21, 1985, was not a proper exercise of the personnel commission's rulemaking authority. RSA chapter 541-A requires that a rule must be filed properly to be "effective against any person or party." RSA 541-A:12, I (Supp. 1986). RSA 541-A:3 (Supp. 1986) sets out a specific procedure for adoption of rules, including filing a notice of and holding a public hearing on the proposed rule. The record in this case indicates that this procedure was not followed. "We stress [again] that State agencies must comply with the Administrative Procedures Act if their 'rules' are to have effect." *Appeal of John Denman*, 120 N.H. 568, 573, 419 A.2d 1084, 1088 (1980). We note that every policy of the personnel department is not equivalent to a "rule," with the concomitant necessity to comply with specific rulemaking procedures. *See* RSA 541-A:1, XIII (Supp. 1986). In this case, however, one cannot

seriously question that a policy regarding State employee termination is a "rule." *See* RSA 21-I:43, II(k) (Supp. 1986) (adopted in 1986, specifically related to removal procedures). When a policy modification constitutes a substantive change in agency policy, it is defined as a rule, not as an explanation of existing policy as the State asserts. *See* RSA 541-A:1, XIII (Supp. 1986). The termination policy set out in the personnel department's memorandum of January 21, 1985, was a substantive policy change. Thus, we hold that it is invalid because proper procedures were not followed and that the personnel commission's already existing rules govern the disposition of this case.

The personnel department's rules affecting the discipline of State employees generally set out three categories of discipline, specifically identifying offenses requiring mandatory discharge, allowing optional discharge in other specified offenses, and categorizing "other offenses" and how they should be handled. *See* N.H. ADMIN. RULES, Per. 308.03 (hereafter Per. 308.03). "Absenteeism without approved leave" is included in the category of "other offenses." Per. 308.03(3)b. The "other offenses" section requires that a State employee be given two written warnings for the same offense before the employee's conduct, in this instance, absence without approved leave, can trigger a discharge. Per. 308.03(4)e. The record in this case indicates clearly that the petitioner did not receive the requisite written warnings prior to her termination.

■■ "An agency must follow its own regulations and a discharge procured in the face of a substantial violation of those regulations is invalid." *Colburn v. Personnel Commission*, 118 N.H. 60, 63, 382 A.2d 907, 909 (1978). Here, the employee was not adequately warned of the consequences of her continued absenteeism without prior approved leave. For that reason, her discharge was improper and the personnel commission's determination is set aside. The petitioner's discharge is vacated, and she shall be reinstated as a permanent State employee retroactive to the date of her dismissal, with an appropriate award of back pay and other benefits to which she is entitled.

*Reversed.*

All concurred.